NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MINERVA MARINE, INC., | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 02-2517 (WHW) |
| JAMES SPILIOTES, individually, and WORLDWIDE MARINE SERVICES, INC., | |
| Defendants. | |
| JAMES SPILIOTES, individually, and WORLDWIDE MARINE SERVICES, INC. | |
| Third-Party Plaintiffs | |
| v. | |
| ANDREAS MARTINOS, individually, | |
| Third-Party Defendant. | |

**Walls, District Judge**

Third-Party Defendant Andreas Martinos ("Third-Party Defendant" or "Martinos") now moves before this Court for an Order of Dismissal against Defendants/Third-Party Plaintiffs James Spiliotes ("Spiliotes") and Worldwide Marine Services, Inc. ("WWM") (together, the "Defendants/Third Party Plaintiffs"), for lack of personal jurisdiction over the Third-Party Defendant with regard to the first third-party claim, pursuant to Fed.R.Civ.P. 12(b)(2). The motion is decided without oral argument pursuant to Fed.R.Civ.P. 78.

NOT FOR PUBLICATION

## FACTS AND PROCEDURAL BACKGROUND

Spiliotes is the majority shareholder and principal of WWM, a business entity with an office and place of business in Cliffside Park, New Jersey. WWM is in the business of offering vessel agency and other services to the marine industry.

Martinos is the Managing Director of Plaintiff Minerva Marine, Inc. ("Minerva"), a Liberian ship management company with an office in Voula, Greece, engaged in the business of operating tanker vessels on a global basis. Martinos resides in Greece, and is a Greek citizen. He is not a United States citizen and has never lived in the United States. He owns no bank accounts in New Jersey, has no personal property or other physical assets in New Jersey, and cannot recall ever traveling to New Jersey for any specific purpose. Id. He has never conducted any business in New Jersey and has no family residing in the state. Id.

Minerva was and is the manager of a tanker vessel known as the Minerva Julie. As a result of an incident that occurred aboard the Minerva Julie on or about September 26, 2001, Minerva filed a complaint against Spiliotes and WWM on May 22, 2002, alleging claims of defamation and injurious falsehood. In their answer to the complaint, Spiliotes and WWM filed eleven counterclaims and two third-party claims against Minerva, Martinos, and against the vessels of the Minerva fleet, *in rem*, seeking damages in excess of $600,000,000.000.

At issue here is the first third-party claim against Martinos, which asserts that as "an officer and director of Minerva ... Martinos personally participated in, authorized and/or directed the wrongful conduct described above in the First, Second, Fourth, Sixth and Seventh Counter-Claims." (Defendants/Third-Party Plaintiffs' Second Amended Answer with Counterclaims and

-2-

NOT FOR PUBLICATION

Third-Party Claims at ¶ 154).  The first third-party claim adds, "defendants and third-party plaintiffs pray that judgment be entered against Martinos personally on the First, Second, Fourth, Sixth and Seventh Counter-Claims."  (Defendants/Third-Party Plaintiffs' Second Amended Answer with Counterclaims and Third-Party Claims at ¶ 155).  Those specified counterclaims are for: wrongful termination pursuant to the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA") (first counterclaim); defamation (second counterclaim); interference with prospective economic advantage (fourth counterclaim); malicious use of process (fifth counterclaim); intentional infliction of emotional distress (sixth counterclaim); and negligent infliction of emotional distress (seventh counterclaim).[1]  In addition to the first third-party claim however, the eleventh counterclaim alleges that Minerva is the alter ego of Martinos.  In her Order of September 13, 2003, Magistrate Judge Wigenton stayed discovery on the alter ego claim.

      Third-Party Defendant now moves to dismiss the first third-party claim on the grounds that this Court lacks personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2).  Specifically, Third-Party Defendant argues that Defendants/Third-Party Plaintiffs can neither show the requisite minimum contacts that support this Court's exercise of personal specific jurisdiction over Martinos, nor can they show that it would it be reasonable to impose such jurisdiction.

**STANDARD**

---

[1] On June 18, 2004, the parties entered a Stipulation and Order of Partial Dismissal, where Defendants/Third-Party Plaintiffs agreed, *inter alia*, to withdraw the second counterclaim.

NOT FOR PUBLICATION

Pursuant to Fed.R.Civ.P. 4(e), federal "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits." See Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 31 (3d Cir.1993). New Jersey's long-arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution. See N.J. Ct. R. 4:4-4; Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981). The question of whether this Court has jurisdiction over the defendant is determined by federal constitutional law. See Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990).

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)). It is the burden of the plaintiff to prove that the defendant has purposefully availed himself of the forum state. See Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

A court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic contacts" with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). To establish general jurisdiction, the plaintiff must show significantly more than mere minimum contacts with the forum state. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).

**NOT FOR PUBLICATION**

Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

Alternatively, a plaintiff may prove that a defendant has purposefully availed itself of a forum by proving that the defendant possessed certain minimum contacts with the forum that justify the exercise of jurisdiction. When a claim is related to or arises out of the defendant's contacts with the forum, personal jurisdiction pursuant to such contacts is referred to as specific jurisdiction. See Helicopteros, 466 U.S. at 416; Dollar Sav. Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

To satisfy specific jurisdiction, a court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted). What constitutes minimum contacts varies with the "quality and nature of defendant's activity." Hanson, 257 U.S. at 253. In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation." Keeton v. Hustler Magazine, 465 U.S. 770 (1984). There must be at least "a single deliberate contact" with the forum state that relates to the cause of action. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. Helicopteros, 466 U.S. at 414; Hanson, 257 U.S. at 253.

Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"

NOT FOR PUBLICATION

Burger King, 471 U.S. at 476 (1985) (quoting Int'l. Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); Pennzoil Products Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 201 (3d Cir.1998). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. See Volkswagen, 444 U.S. at 292.

Once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Miller Yacht Sales, Inc., v. Smith, 384 F.3d 93, 97 (3d Cir.2004) (citation omitted). "[T]he plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir.1990); see also Stranahan Gear Co. v. NL Industries, Inc., 800 F.2d 53, 58 (3d Cir. 1986) (cursory allegation reiterated in a sworn affidavit is insufficient to satisfy the plaintiff's burden of proof). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." Patterson by Patterson, 893 F.2d at 604. The plaintiff need only make a *prima facie* showing of jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Mellon Bank PSFS, Nat'l Assn. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

## DISCUSSION

Third-Party Defendant has moved to dismiss the first third-party claim for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). Defendants/Third-Party Plaintiffs argue that there is specific jurisdiction with regard to the first third-party claim. Alternatively, Defendants/Third-Party Plaintiffs contend that the Third-Party Defendant is subject to general

NOT FOR PUBLICATION

jurisdiction in this forum by virtue of the eleventh counterclaim, which alleges that Minerva is the alter ego of Martinos. The Court will begin by addressing Defendants/Third-Party Plaintiffs' alter ego claim, since resolving this issue in the Defendants/Third-Party Plaintiffs' favor would obviate the need for this Court to consider specific jurisdiction with regard to the Third Party-Defendant.

      I.      **Defendants/Third-Party Plaintiffs' Alter Ego Claim as a Basis for Personal Jurisdiction**

Defendants/Third-Party Plaintiffs argue that this Court may assert personal jurisdiction over the Third-Party Defendant because the eleventh counterclaim alleges that Minerva is the alter ego of Martinos, and Minerva is subject to general jurisdiction in this Court.[2]

It is settled that if an individual is determined to be the alter ego of a corporate defendant, and the corporate defendant is subject to a forum's jurisdiction, then the individual will also be subject to the forum's jurisdiction. See Hudson County Carpenters v. V.S.R. Construction, 127 F.Supp.2d 565 (D.N.J. 2000) (if non-judgment defendants are alleged to be the alter ego of judgment defendants, and the judgment defendants are subject to personal jurisdiction of this court, then judgment defendant's contacts with New Jersey would be imputed to the non-judgment defendants); see also Network Enterprises, Inc. v. APBA Offshore Productions, Inc., 2002 U.S. Dist. LEXIS 17256 (S.D.N.Y. 2002) ("When allegations are sufficient to disregard a corporation's identity and hold its control person liable for its actions, the control person is

---

[2] Defendants/Third-Party Plaintiffs have argued that it is undisputed that Minerva is subject to general personal jurisdiction in this Court. Third-Party Defendant acknowledges that Minerva has availed itself of the benefits of conducting business in New Jersey. (Third-Party Defendant's Reply at p. 10).

**NOT FOR PUBLICATION**

amenable to personal jurisdiction by imputation of the corporation's contacts with the forum."). Defendants/Third-Party Plaintiffs add that because discovery has been stayed in this case on the alter ego claim, the Court need only determine whether their eleventh counterclaim has sufficiently alleged that Minerva is the alter ego of Martinos.  See Network Enterprises, Inc. v. Alweiss, 2003 U.S. Dist. Lexis 491 (S.D.N.Y.) (because limited discovery has been conducted on the alter ego claim, court will treat plaintiff's factual allegations as true, and draw any inferences in their favor); In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d 288, 292 (3d Cir. 2004) ("[p]rior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction").

While Defendants/Third-Party Plaintiffs assertions are correct, there is an important distinction that must be drawn between the cases they cite and this one.  In the cases cited by the Defendants/Third-Party Plaintiffs, the individual defendants moved to dismiss the alter ego claims that had been asserted against them.  In this case, however, the Third-Party Defendant has not moved to dismiss the alter ego claim (the eleventh counterclaim).  Rather, he has moved to dismiss the *first third-party claim*, which explicitly incorporates the first, second, fourth, fifth, sixth and seventh counterclaims, but does not incorporate the eleventh counterclaim. Defendants/Third Party-Plaintiffs cannot rely on the alter ego claim as a catch-all for personal jurisdiction against the Third-Party Defendant when they have failed to incorporate it in the first third-party claim.  See 5A Wright & Miller, Federal Practice & Procedure § 1326 at 431 (3d ed. 2004) ("references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation"); Fed.R.Civ.P. 10(c).

NOT FOR PUBLICATION

Because the first third-party claim fails to explicitly incorporate the alter ego claim, this Court must determine whether the first third-party claim satisfies the requirements of specific personal jurisdiction with regard to the Third-Party Defendant.

### II. Personal Jurisdiction over Third-Party Defendant with regard to the first third-party claim

Defendants/Third-Party Plaintiffs argue that this Court has specific personal jurisdiction over the Third-Party Defendant based on his contacts with the forum. For this Court to assert specific personal jurisdiction over the Third-Party Defendant, Defendants/Third-Party Plaintiffs must produce sufficient evidence to make a *prima facie* showing that Martinos possessed minimum contacts with this forum, and if such minimum contacts are shown, that the exercise of jurisdiction would comport with fair play and substantial justice.

Specific personal jurisdiction is a claim specific determination. Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001) (specific jurisdiction analysis is claim specific); see also Gehling v. St. George's Sch. of Med., 773 F.2d 539, 543-44 (3d Cir. 1985) (finding personal jurisdiction over fraudulent misrepresentation and emotional distress claims, but not negligence and breach of contract claims). In making a decision as to personal jurisdiction, this Court must determine whether the Defendants/Third-Party Plaintiffs have sufficiently alleged jurisdiction over the Third-Party Defendant as to each incorporated claim - the first, fourth, fifth, sixth and seventh counterclaims.[3]

---

[3] The second counterclaim cannot be incorporated against the Third-Party Defendant because it was withdrawn by the Defendants/Third-Party Plaintiffs. (See fn.1, supra).

**NOT FOR PUBLICATION**

According to the Defendants/Third-Party Plaintiffs, Martinos's specific contacts with New Jersey that give rise to personal jurisdiction are: 1) his firing of New Jersey resident Spiliotes from his position with Minerva in New Jersey, which is the basis of the CEPA counterclaim (first counterclaim) and 2) his commencement of this lawsuit in New Jersey Federal Court against a New Jersey resident, which is the basis of the wrongful abuse of process counter claim (fifth counterclaim). Defendants/Third-Party Plaintiffs add that Martinos admitted in his deposition both firing Spiliotes and commencing the lawsuit in New Jersey. (Certification of Todd Kenyon at Exh. B).

First, this Court will address the wrongful termination counterclaim (first counterclaim) and interference with prospective economic advantage counterclaim (fourth counterclaim).[4] Both of these counterclaims are based on the allegation that Martinos fired Spiliotes. As evidence to support this allegation, Defendants/Third-Party Plaintiffs have submitted an attorney certification that includes deposition testimony of Martinos and Spiliotes, with both men stating that Spiliotes was fired by Martinos.[5] (Kenyon Certification at ¶¶ 2-3; Exh. A at p. 301; Exh. B at p. 293).

---

[4]The "wrongful termination" claim is more appropriately characterized as a "retaliatory discharge" claim.

[5]Third-Party Defendant argues that Defendants/Third-Party Plaintiffs have only offered inconsistent testimony of Spiliotes to support their claim that he was fired by Martinos. Specifically, Third-Party Defendant asserts that Spiliotes repeatedly failed to claim that Martinos had fired him, until he implicated Martinos in his deposition. (Fernandez Certification at ¶¶ 8-10). This testimony is consistent, however. Third-Party Defendant's argument also ignores the fact that Martinos himself testified at his deposition that he fired Spiliotes. (Kenyon Certification at Exh. B, p. 293). Moreover, in reviewing this motion to dismiss, this Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Sav. Bank, 954 F.2d at 142 n. 1.

NOT FOR PUBLICATION

Third-Party Defendant correctly argues that jurisdiction cannot be exercised over him merely by virtue of the fact that he is the Managing Director of Minerva. Keeton, 465 U.S. at 781 n.13 ("jurisdiction over an employee does not automatically follow from jurisdiction over the corporations which employs him"). However, "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978). Here, Defendants/Third-Party Plaintiffs have alleged, and have offered evidence to support their allegation, that Martinos personally committed the tort by firing Spiliotes. It follows that Martinos cannot avoid personal jurisdiction with regard to these claims by using the corporation as a shield. Rather, Martinos's contacts must be assessed individually. Keeton, 465 U.S. at 781 n.13.

Third-Party Defendant submits evidence, in the form of deposition testimony, to assert that he is not a United States citizen, has never resided in the United States, owns no bank accounts in New Jersey, has no personal property or other physical assets in New Jersey, cannot recall ever traveling to New Jersey, has never conducted business in the state, and has no family residing in the state. (Fernandez Certification at Exh. B). These contacts, even at a minimal level, are insufficient to demonstrate that Martinos purposefully availed himself of the privilege of conducting his activities within the forum.

However, when a plaintiff has alleged an intentional tort, the court must consider whether the minimum contacts prong of the Due Process test can be satisfied through application of the "effects test" found in Calder v. Jones, 465 U.S. 783 (1984). Both the retaliatory discharge and

NOT FOR PUBLICATION

interference with prospective economic advantage claims are intentional torts.  See Brennan v. Norton, 350 F.3d 399, 431-32 (3d Cir. 2003) (CEPA is a codification of "the preexisting common-law tort cause of action for...retaliatory discharge") (citation omitted); see also Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739 (1989) (complaint based on allegation of intentional interference with economic advantage must allege intent).

Under Calder, "an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied."  IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998).  As a predicate for application of the "effects" test, the nonresident defendant must have "purposefully and deliberately directed his act toward the forum state."  Allocca v. Wachovia, 2005 WL 2972845, at *7 (D.N.J. 2005).  As this Court has noted, however, it is

> necessary to distinguish between a defendant's acts which: (1) are aimed at a plaintiff who is located in the forum and (2) are aimed at the forum itself. In the first instance, defendant's actions, directed at the plaintiff, have only an unintended effect in the forum, such as economic damage. In the second instance, the defendant performs an act with "the very purpose of having an effect" in the forum. Only the latter kind of intentional act constitutes a purposeful and deliberate contact with the forum which makes it fair and reasonable for the forum to exercise personal jurisdiction.

Id.  Here, Martinos's alleged firing of Spiliotes is more appropriately described as an act aimed at a party who is located in New Jersey, rather than as an act aimed at New Jersey.  While the firing may have caused Spiliotes damages in New Jersey, it cannot be said that Martinos performed this act with the very purpose of having such an impact on the state of New Jersey.  Accordingly, the Third-Party Defendant lacks minimum contacts with regard to these claims under the Calder

**NOT FOR PUBLICATION**

effects test. It follows that this Court lacks personal jurisdiction over the Third-Party Defendant with regard to Defendants/Third-Party Plaintiffs' first and fourth counterclaims.

Defendants/Third-Party Plaintiffs also claim that the Third-Party Defendant is subject to personal jurisdiction because he commenced the within lawsuit in New Jersey federal court against a New Jersey resident, which is the basis of the wrongful abuse of process counterclaim (fifth counterclaim). The filing of the lawsuit is also the basis for the Defendants/Third-Party Plaintiffs' intentional and negligent infliction of emotional distress counterclaims (sixth and seventh counterclaims, respectively). In support of the allegation that the Third-Party Defendant filed this lawsuit in this forum, Defendants/Third-Party Plaintiffs have again submitted an attorney certification that includes deposition testimony of Martinos, stating that he made the final decision to file the lawuit against Spiliotes. (Kenyon Certification at ¶¶ 5-7; Exh. B, pp. 239-40, 296-97, 337-38).

Again, it must be noted that Martinos cannot shield himself from jurisdiction through Minerva if he is alleged to have individually participated in the tort. Donsco, Inc., 587 F.2d at 606. Here, Martinos is alleged to have authorized the filing of the suit in this forum against Spiliotes. By authorizing the lawsuit, it is clear that Martinos has purposefully availed himself of this forum. See, e.g., Adam v. Saenger, 303 U.S. 59, 67-68 (1938) ("The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence."). If there was a malicious motive to the lawsuit, it would have been foreseeable that Martinos's "conduct and connection with the forum

NOT FOR PUBLICATION

State [were] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp., 444 U.S. at 297. It follows that Martinos possesses the requisite minimum contacts with this forum with regard to the malicious use of process counterclaim, and the intentional and negligent infliction of emotional distress counterclaims. (fifth, sixth and seventh counterclaims, respectively).

Having satisfied the minimum contacts prong due process, this Court may consider whether the exercise of jurisdiction over Martinos would comport with "traditional notions of fair play and substantial justice." Int'l. Shoe Co., 326 U.S. at 320. That is to ask whether it would be reasonable to ask Martinos to defend the suit in this forum. See World-Wide Volkswagen Corp., 444 U.S. at 292. A defendant possesses a high burden in convincing the court that the exercise of jurisdiction would be unreasonable. Burger King Corp., 471 U.S. at 477 (defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."); Id. at 477-78 (only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.").

To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies. See World-Wide Volkswagen Corp., 444 U.S. at 292.

**NOT FOR PUBLICATION**

Third-Party Defendant argues that the burden on the him would be great, as he has already traveled to New York to give his deposition testimony as Minerva's witness, and has no reason to expect to be haled into this Court because he lacks personal contacts with this forum and the litigation.  He adds that his employer company, Minerva, is already a party in this action, eliminating any possibility that Defendants/Third-Party Plaintiffs will not have an opportunity to see the issues raised in this case decided on the merits.  Last, Martinos argues that he will suffer harm to his personal reputation as a businessman and to the particulars of everyday life and that of his family.

Third-Party Defendant's arguments do not come close to providing a compelling reason as to why the rendering of jurisdiction over Martinos by this forum would be unreasonable.  That Martinos has already traveled to New York to give a deposition does not provide a reason why he would be burdened.  If anything, it shows that the Third-Party Defendant is capable of participating in this lawsuit.  With regard to his belief that he lacks contacts with this forum, this Court has already determined that by authorizing the lawsuit, Martinos possesses minimum contacts with this forum with regard to the fifth, sixth and seventh counterclaims.  Nor can this Court find the exercise of jurisdiction over Martinos unreasonable simply because his company has already been subject to jurisdiction here in the same matter.  Jurisdiction is specific to each party, and a corporate officer "cannot shield himself behind a corporation when he is an actual participant in the tort."  Donsco, Inc., 587 F.2d at 606; Keeton, 465 U.S. at 781 n.13.  This Court also finds that unspecified potential harm to the Third-Party Defendant's business or family is not a compelling reason as to why the exercise of jurisdiction would be unreasonable.  Each of

**NOT FOR PUBLICATION**

the other World-Wide Volkswagen factors favors the exercise of personal jurisdiction in this case. This Court has a basis for personal jurisdiction over Martinos with regard to the fifth, sixth and seventh counterclaims, as incorporated by the first third-party claim.

## CONCLUSION

Third-Party Defendant's Motion to Dismiss with regard to the first and fourth counterclaims, as incorporated by the first third-party claim, is granted. Third-Party Defendant's Motion to Dismiss with regard to the fifth, sixth and seventh counterclaims, as incorporated by the first third-party claim is denied.

                                                  **s/William H. Walls**
                                                  United States Senior District Judge

**NOT FOR PUBLICATION**

**Appearances**

Michael Fernandez
Freehill Hogan & Mahar, LLP
850 Bergen Ave.
Jersey City, New Jersey 07306

Todd Kenyon
Betancourt, Van Hemmen, Greco & Kenyon
114 Maple Ave.
Red Bank, New Jersey 07701

-17-